# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

In re Petition of DEBORAH D. KUBLER                           No. MC 11-0048 JB
ANDREA LYNN KUBLER, and ROBERT
MICHAEL KUBLER, JR.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Verified Petition of Deborah D. Kubler,

Andrea Lynn Kubler, and Robert Michael Kubler, Jr., Pursuant to Rule 27 of the Federal Rules of

Civil Procedure, to Take and Perpetuate the Audio-Visual and Stenographic Deposition of Petitioner

Deborah D. Kubler, filed December 14, 2011 (Doc. 1)("Petition").  The Court held a hearing on

January 19, 2012.  The primary issue is whether the Court should allow, under rule 27 of the Federal

Rules of Civil Procedure, the deposition of Petitioner Deborah D. Kubler to be taken as promptly

as possible because of her medical condition.  Because the parties do not dispute that a pre-suit

deposition under rule 27 is appropriate and because D. Kubler has made an adequate showing for

a deposition under this rule, the Court will permit an oral deposition under rule 27(a) to perpetuate

D. Kubler's testimony.  Pursuant to the parties' agreement at the hearing, the Court will permit the

potential Defendants[1] to conduct a two-and-a-half-hour interview with D. Kubler on January 31,

2012 at 9:00 a.m., prior to the deposition, for purposes of acquiring information about her potential

claims.  The Court will schedule the oral deposition to occur on the days following the pre-

deposition interview, from February 1, 2012, through February 3, 2012.  Pursuant to the parties'

agreement at the hearing, Petitioners D. Kubler, Andrea Lynn Kubler, and Robert Michael Kubler

Jr. will immediately provide the potential Defendants with the appropriate medical releases for D.

---

[1]The potential Defendants include the following individuals or entities: (i) the United States
of America; (ii) Presbyterian Healthcare Services, Inc.; (iii) Presbyterian PMG Northside Urgent
Care; (iv) Radiology Associates of Albuquerque, P.A.; and (v) Kathleen Marie Lopez, M.D.

Kubler and, in a timely manner and to the extent practicable, provide the potential Defendants with

D. Kubler's medical records in the Kublers' possession.

## FACTUAL BACKGROUND

D. Kubler was diagnosed with terminal stage IV primary lung cancer that spread to her liver.

See Petition ¶ 1, at 1.  D. Kubler is advised and believes from the information that she has received

from her health care providers that her terminal stage IV lung cancer makes her life expectancy

uncertain.  See Petition ¶ 1, at 1-2.  D. Kubler "has already undergone two rounds of multiple

difficult and debilitating chemotherapy treatments."  Petition ¶ 1, at 2.

The Kublers

have filed Form 95 administrative claims[2] against the United States of America under the Federal Tort Claims Act[3] as a result of alleged acts and omissions of federal health care providers, employees, and agents at the 377th Medical Group at Kirtland Air Force Base in Albuquerque, New Mexico, and against other federal agencies and health care providers.

---

[2]28 U.S.C. § 2675(a) provides:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  By regulation, a claim is considered presented when the agency receives, from the claimant or a legal representative, "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages."  Denton v. United States, 440 F.App'x 498, 501 (7th Cir. 2011)(unpublished)(emphasis omitted)(quoting 28 C.F.R. § 14.2(a)).  A Standard Form 95 is one method by which a claimant may present their claim for damages to a respective federal agency as required under 28 U.S.C. § 2675(a).  See U.S. General Services Administration, F o r m   9 5   ( 2 0 0 7 ) ,   a v a i l a b l e   a t http://contacts.gsa.gov/webforms.nsf/0/635588D718E338F385256B1B007FBE64/$file/SF%209 5.pdf.

[3]28 U.S.C. §§ 1346(b), 2671-2680.

Petition ¶ 2, at 2.  "Upon information and belief, these Form 95 claims are currently pending under administrative review by the United States Air Force."  Petition ¶ 2, at 2.  The Kublers represent that they "are also still assessing the culpability of conduct by other health care providers, independent of the federal actors, and are still in the process of identifying facts and circumstances that may provide the basis for the timely assertion of those other claims."  Petition ¶ 2, at 2.  Those claims against certain health care providers who are independent of the federal actors and may be potential adverse parties, may require administrative review under the New Mexico Medical Malpractice Act, N.M.S.A. 1978, §§ 41-5-1 to 41-5-29.  See Petition ¶ 2, at 2.  The Kublers are not able, at this time, to take D. Kubler's deposition, because they have not yet filed a lawsuit.  See Petition ¶ 3, at 2.  D. Kubler "expects that she will be a Plaintiff and a party to an action in a United States District Court" under 28 U.S.C. § 1346(b), the Federal Tort Claims Act, and most likely under 28 U.S.C. § 1367(b) for various state law claims.  See Petition ¶ 7, at 5.  A. Kubler and R. Kubler expect to be plaintiffs to the same action.  See Petition ¶ 8, at 5.

## PROCEDURAL BACKGROUND

On December 14, 2011, the Kublers filed their Petition.  The Kublers ask the Court to set a prompt date for a hearing pursuant to rule 27(a)(2) of the Federal Rules of Civil Procedure and then, at that hearing pursuant to rule 27(a)(3) held for purposes of considering the petition, enter an order that D. Kubler's deposition be held as promptly as possible upon such terms and conditions as the Court may set.  See Petition ¶ 14, at 13.  On December 14, 2011, the Kublers filed a separate motion requesting that the Court set a prompt date for a hearing pursuant to rule 27(a)(2).  See Petitioners' Request for Rule 27 Hearing at 1-2 (Doc. 2).

The Kublers request that the Court permit them to take a pre-suit deposition under rule 27(a)(3) to perpetuate D. Kubler's testimony.  See Petition ¶ 14, at 13.  They assert that permitting

them to take this deposition, pursuant to rule 27(a)(3), will prevent a failure or delay of justice.  See Petition ¶ 4, at 4.  They assert that, based on her health condition, "it is likely that her testimony will be lost before a deposition could be taken before the filing of a lawsuit and/or in the normal course of litigation."  Petition ¶ 4, at 4.  The Kublers contend that "[t]he requested deposition to perpetuate the testimony of Petitioner D. Kubler is not a deposition for the purposes of seeking discovery of any other person or entity."  Petition ¶ 5, at 4.  They represent that "[t]he deposition of Petitioner Deborah D. Kubler is only being sought to perpetuate the known testimony of Petitioner Deborah D. Kubler, who is 59 years old and seriously ill with terminal stage IV lung cancer that spread to her liver."  Petition ¶ 6, at 4.  They argue that D. Kubler "has information and evidence within her knowledge, and on her behalf, to provide at her deposition regarding the factual basis of her claims and her interactions with her health care providers" that is known only to her.  Petition ¶ 6, at 4-5.  The Kublers contend that "she will also offer her testimony regarding the damages that she has suffered and sustained."  Petition ¶ 6, at 5.  The Kublers represent that D. Kubler will, once she is finally able to file a suit, bring a suit alleging, "inter alia, medical negligence" claims on a variety of theories.  Petition ¶ 7, at 5.  In the Petition, the Kublers set out twelve separate claims and/or theories on which she may base her claims.  See Petition ¶ 10, at 8-9.  The Kublers also list the entities and individuals whom they expect to be defendants in an eventual lawsuit on these underlying facts.  See Petition ¶ 11, at 9-10.  Beyond the general facts underlying the Kublers' asserted claims of medical negligence that led to D. Kubler's current medical condition of stage IV cancer, along with A. Kubler and R. Kubler's derivative claims from those injuries, the Kublers set out several specific subjects on which they expect D. Kubler to testify, including: (i) the reasons she sought urgent care on February 17, 2009 at Presbyterian PMG Northside Urgent Care; (ii) the care she received on that date; (iii) the chest x-ray she received on that date along with the conversations

she had with health care practitioners regarding the x-ray; (iv) a follow-up appointment at the 377th

Medical Group at the Kirtland Air Force Base; (v) her telephone conversation with Kathleen Marie

Lopez, M.D. regarding the chest x-ray; (vi) her appointment with the 377th Medical Group on

February 20, 2009, including the information she provided to the medical group and the discussions

during treatment; (vii) her appointment for an annual physical examination with the 377th Medical

Group on March 10, 2010, including the information she provided to the medical group and the

discussions during treatment; (viii) her subsequent physical symptoms that led to her return to the

377th Medical Group in November 2010 and the resulting diagnosis of cancer; (ix) her treatment

for this cancer; (x) her physical pain and suffering as well as attendant physical problems related to

this treatment; (xi) her damages; and (xii) the effects of these incidents on A. Kubler and R. Kubler

as it relates to their potential claims.  See Petition ¶ 13, at 10-13.

On December 19, 2011, the Court concluded that the Kublers had made the requisite

showing based on the contents of their verified Petition to justify setting a hearing pursuant to rule

27(a) on the issue of perpetuating D. Kubler's testimony.  See Order Granting Request for Rule 27

Hearing and Notice of Hearing (Doc. 4)("Order").  The Court set a hearing for January 19, 2012.[4]

On December 21, 2011, the Kublers served the following entities and individuals with the Petition

and the Order setting the hearing: (i) the United States Attorney's Office, see Affidavit of Service

at 1-3 (dated December 21, 2011), filed December 29, 2011 (Doc. 5); (ii) Presbyterian Healthcare

Services, Inc., see Affidavit of Service at 1-3 (dated December 21, 2011), filed December 29, 2011

(Doc. 7); (iii) Presbyterian PMG Northside Urgent Care, see Affidavit of Service at 1-3 (dated

---

[4]The Court set this date for the hearing to give the Kublers time to comply with the twenty-one day service requirement in rule 27(a)(2) of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 27(a)(2) ("At least 21 days before the hearing date, the petitioner must serve each expected adverse party with a copy of the petition and a notice stating the time and place of the hearing.").

December 21, 2011), filed December 29, 2011 (Doc. 8); (iv) Radiology Associates of Albuquerque,

P.A., see Affidavit of Service at 1-3 (dated December 21, 2011), filed December 29, 2011 (Doc. 9);

and (v) Dr. Lopez, see Affidavit of Service at 1-3 (dated December 21, 2011), filed December 29,

2011 (Doc. 10).  On December 22, 2011, the Kublers served the United States of America with their

Petition and the Order setting the hearing.  See Affidavit of Service at 1-3 (dated December 22,

2011), filed December 29, 2011 (Doc. 6).  Since the date of service for each of these entities and

individuals, none of them have filed any responsive pleadings or made a formal appearance through

the filing of any pleading or motion.

At the hearing on January 19, 2012, the following potential Defendants had an attorney enter

an appearance: (i) the United States; (ii) Presbyterian PMG Northside Urgent Care and Presbyterian

Health Services (collectively "Presbyterian"); (iii) Radiology Associates; and (iv) Dr. Lopez.

See Transcript of Hearing at 2:15-3:1 (taken January 19, 2012)(Court, Lewis, Chanez,

Maggiore)("Tr.").[5]  The potential Defendants asserted that they do not oppose taking D. Kubler's

deposition under rule 27, but clarified that they had some concerns regarding the parameters of the

deposition.  See Tr. at 3:6-4:6 (Court, Lewis, Maggiore).  The potential Defendants noted that it

would be difficult to adequately prepare for the deposition without having some idea of the potential

claims against them and the underlying facts supporting those claims.  See Tr. at 3:21-4:6

(Maggiore).  The potential Defendants noted that there may be difficulty obtaining some of the

medical records and other evidence related to these claims before the deposition takes place.  See

Tr. at 3:21-4:6 (Maggiore).  W. Ann Maggiore, Presbyterian's attorney, represented that opposing

counsel had informed her that he would be willing to provide her with D. Kubler's x-rays.  See Tr.

---

[5]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

at 4:7-13 (Maggiore).  The potential Defendants requested that the Court set the deposition several weeks from the hearing so that they could evaluate D. Kubler's medical records to prepare for the deposition.  See Tr. at 4:20-5:15 (Maggiore, Court).  The potential Defendants asserted that they would prefer that there first be a deposition for the purposes of discovery to properly understand D. Kubler's claims before the parties conduct a trial deposition for the purposes of perpetuating D. Kubler's testimony.  See Tr. at 4:20-5:2, 5:23-6:7 (Maggiore, Chanez).  The Kublers noted that they had already provided some medical records to the potential Defendants that address D. Kubler's oncology treatment.  See Tr. at 6:25-7:12 (Farber).  The Kublers asserted that rule 27 does not permit a discovery deposition not intended to perpetuate testimony for trial and objected to such a deposition on that basis.  See Tr. at 7:13-18 (Farber).  The Kublers stated that they would be willing to provide whatever medical records they had to the potential Defendants and noted that many of the records were already in Presbyterian's possession.  See Tr. 7:19-8:4 (Farber).  The Kublers also noted that the United States would have in its possession the records relating to the treatment at the 377th Medical Group.  See Tr. at 8:5-17 (Farber).  The Kublers asserted that they had in detail laid out in their Petition the reasons supporting their need for the deposition, the potential defendants to a future lawsuit, the potential claims and theories, and the expected subject matter of the deposition. See Tr. at 8:5-17 (Farber).  The Kublers emphasized that some of the potential Defendants, other than the United States, may never become defendants in a lawsuit.  See Tr. at 8:14-17 (Farber).

The Kublers stated that their main concern with delaying the deposition is that D. Kubler's health condition and life expectancy are unpredictable and, if she were to die before her deposition, her death would jeopardize the success of any claims the Petitioners may bring at a later time.  See Tr. at 8:18-21 (Farber).  The Kublers represented that D. Kubler was diagnosed with lung cancer approximately a year ago and has lived beyond the median life expectancy for those with her

condition.  See Tr. at 9:5-16 (Farber).  The Kublers noted that three hours of deposition testimony, not including time for any breaks in the deposition, would be sufficient for them to perpetuate the testimony they needed from D. Kubler.  See Tr. at 9:25-10:16 (Farber).  The Kublers requested that the total deposition time not exceed seven hours.  See Tr. at 10:6-16 (Farber).  The Kublers noted that D. Kubler is more alert in the mornings and becomes tired in the afternoon.  See Tr. at 10:6-14 (Farber).  The Kublers suggested that the deposition, which they asserted may require at total of three days based on D. Kubler's poor medical condition, begin on February 1, 2012.  See Tr. at 10:9-19 (Farber).  The Kublers stated that conducting at least a portion of the deposition at the office of the court reporter who will transcribe the deposition would be appropriate.  See Tr. at 10:20-25 (Farber).  The Court noted that it understands there is a practical difference between a discovery deposition and a trial deposition, but recognized that the applicable rules regarding discovery do not make such a distinction.  See Tr. at 11:18-25 (Court).  The Court said that it was amenable to having the deposition take place over several days, but asserted that it was not inclined to permit more than one pre-suit deposition.  See Tr. at 12:1-22 (Court).  The Kublers reiterated that they were willing to produce D. Kubler's x-ray films before the deposition.  See Tr. at 12:23-13:1 (Court, Farber).  The Court stated that it was inclined to permit the potential Defendants to ask some questions during the deposition which were more for the purposes of discovery along with questions that were more for purposes of use at trial.  See Tr. at 13:1-14:7 (Court).

Following the Court's statement that it was not inclined to permit multiple depositions, the potential Defendants asked that they be permitted to conduct a pre-deposition interview with D. Kubler to help prepare themselves for the deposition.  See Tr. at 13:24-15:4 (Maggiore).  The Kublers expressed concern that, if such an interview were recorded, some of D. Kubler's answers during the interview could be misinterpreted or misused.  See Tr. at 15:6-10 (Farber).  The Court

-8-

suggested having the parties stipulate that they could use the interview only for case-development purposes and could not use the interview in any form at trial. See Tr. at 15:11-16 (Court). The parties agreed to this stipulation. See Tr. at 15:17-22 (Maggiore, Court, Farber). The Kublers clarified that they would want a specified time to conduct the interview and specified time for the length of the interview. See Tr. at 15:21-22 (Farber). Ms. Maggiore, on behalf of Presbyterian, said that she would need at most an hour to interview D. Kubler. See Tr. at 16:3-7 (Maggiore). Assistant United States Attorney Virgil Lewis asserted that the United States, if it were to agree to this stipulation, would ask that D. Kubler provide a medical release and that it receive approximately an hour to an hour and a half of time to conduct a pre-deposition interview. See Tr. at 16:12-19 (Lewis). The Kublers represented that they would be able to provide many of the medical records immediately without the need of a release. See Tr. at 16:20-25 (Farber). The United States contended that it would prefer five years of medical records consistent with rule 26 and the applicable local rules. See Tr. at 17:1-5 (Lewis). The Kublers noted that they did not have some of D. Kubler's medical records from 2006 that relate to a car accident in which D. Kubler was involved. See Tr. at 17:21-18:2 (Farber). The Kublers stated that they had no opposition to providing the medical records in their possession to the potential Defendants. See Tr. at 18:3-6 (Court, Farber).

The Court said that it would require the Kublers to quickly get a release to the potential Defendants so that they could acquire as many medical records as possible prior to the deposition. See Tr. at 18:12-15 (Court). The Kublers noted that they were aware of all the major medical providers D. Kubler had seen in the past several years, but noted that D. Kubler's poor memory, caused by her chemotherapy, may prevent her from recalling each individual provider. See Tr. at 18:16-20, (Farber). The Court stated that it was inclined to give the potential Defendants two-and-a

half hours in which to conduct their pre-deposition interview.  <u>See</u> Tr. at 19:4-11 (Court).  The Court asked the potential Defendants to agree that they would not conduct an aggressive pre-deposition interview, but only a less formal conversation to gather information.  <u>See</u> Tr. at 21:13-16 (Court). The potential Defendants agreed that they would conduct a more informal interview.  <u>See</u> Tr. at 21:17-23 (Court, Maggiore, Lewis).  The Court stated that the parties could conduct the pre-deposition interview in the Court's jury room.  <u>See</u> Tr. at 22:25-23:1 (Court).  The Court then discussed conducting the pre-deposition interview at approximately 9:00 a.m. on January 31, 2012 and beginning the deposition on February 1, 2012. <u>See</u> Tr. at 23:22-24:5 (Court, Farber, A. Kubler). The potential Defendants stated that they would have difficulty getting the relevant medical records pursuant to a medical release by that time.  <u>See</u> Tr. at 24:6-11 (Maggiore).  The Kublers reiterated their concern that D. Kubler may not be able to provide testimony at all if too much delay occurs. <u>See</u> Tr. at 24:12-25 (Farber).  The Court then stated that the pre-deposition interview would occur from approximately 9:00 a.m. to 11:45 a.m. -- two-and-one-half hours of interview with a fifteen minute break -- on January 31, 2012.  <u>See</u> Tr. at 25:1-5 (Court).  The Court stated that the parties would conduct the deposition on February 1, 2012 through February 3, 2012, and that the deposition would begin at 9:00 a.m. on each of these days.  <u>See</u> Tr. at 25:1-7, 26:9-18 (Court).  Regarding the ability of D. Kubler to recall all her medical providers for a medical release form, the Court stated that it would ask the Kublers to provide as much information as they could under the circumstances. <u>See</u> Tr. at 26:21-27:4 (Farber, Court).  A. Kubler stated that she was relatively familiar with D. Kubler's medical history and would assist in providing information regarding her history of medical providers.  <u>See</u> Tr. at 27:24-28:5 (A. Kubler).

## **LAW REGARDING PRE-SUIT DEPOSITIONS UNDER RULE 27**

Rule 27(a) of the Federal Rules of Civil Procedure provides in relevant part:

(1)     **Petition**.  A person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides.  The petition must ask for an order authorizing the petitioner to depose the named persons in order to perpetuate their testimony. . . .

. . . .

(2)     **Notice and Service**.  At least 21 days before the hearing date, the petitioner must serve each expected adverse party with a copy of the petition and a notice stating the time and place of the hearing.  The notice may be served either inside or outside the district or state in the manner provided in Rule 4.  If that service cannot be made with reasonable diligence on an expected adverse party, the court may order service by publication or otherwise.  The court must appoint an attorney to represent persons not served in the manner provided in Rule 4 and to cross-examine the deponent if an unserved person is not otherwise represented.  If any expected adverse party is a minor or is incompetent, Rule 17(c) applies.

(3)     **Order and Examination.**  If satisfied that perpetuating the testimony may prevent a failure or delay of justice, the court must issue an order that designates or describes the persons whose depositions may be taken, specifies the subject matter of the examinations, and states whether the depositions will be taken orally or by written interrogatories.  The depositions may then be taken under these rules, and the court may issue orders like those authorized by Rules 34 and 35.  A reference in these rules to the court where an action is pending means, for purposes of this rule, the court where the petition for the deposition was filed.

Fed. R. Civ. P. 27(a)(1)-(3).  "Rule 27 properly applies only in that special category of cases where it is necessary to prevent testimony from being lost."  Ash v. Cort, 512 F.2d 909, 911 (3d Cir. 1975).

It is not "a substitute for general discovery."  Ash v. Cort, 512 at 913.  The United States Court of Appeals for the Fifth Circuit has stated:

Under Rule 27, the district judge may deny discovery in anticipation of litigation if the petition fails to show that the petitioner expects to be a party to an action which he is unable to bring or cause to be brought and that without the perpetuation of the testimony a failure or delay of justice will occur.

In re Application of Eisenberg, 654 F.2d 1107, 1111 (5th Cir. 1981).

As to the scope of a deposition under rule 27, courts have indicated that the permissible

scope of a deposition is somewhat narrower than that permitted for rule 30 depositions and is generally limited to the topics that the district court has approved as permissible topics under rule 27(a)(3).  See Nevada v. O'Leary, 63 F.3d 932, 936 (9th Cir. 1995).  As Professor Moore has stated: "[T]hose courts that have directly addressed the issue have found that Rule 27 permits the perpetuation of evidence only when the petitioner shows that the evidence sought is material and competent."  6 J. Moore, Moore's Federal Practice § 27.16, at 27-32 to 27-33 (3d ed. 2011). "Evidence is material if it is relevant and goes to the substantial matters in dispute or has a legitimate or effective bearing on the decision."  6 J. Moore, supra, § 27.16, at 27-33.  As to the procedures that apply to conducting a rule 27(a) deposition, Professor Moore has recognized that depositions under this rule "are taken in the manner prescribed by the Federal Rules of Civil Procedure for depositions in pending actions."  6 J. Moore, supra, § 27.16, at 27-32.

"Unlike the usual discovery motion, the denial or grant of which has been considered interlocutory and non-appealable," several courts have recognized that orders on a rule 27(a) deposition are appealable, because "denial of a motion to perpetuate testimony would . . . seem to require immediate review."  Ash v. Cort, 512 F.2d at 911-12 (citing Mosseller v. United States, 158 F.2d 380, 383 (2d Cir. 1946)).  A district court's decision to grant or deny a petitioner to take a deposition under rule 27 is reviewed for abuse of discretion.  See Ash v. Cort, 512 F.2d at 912.

## LAW REGARDING DEPOSITIONS

Rule 32 of the Federal Rules of Civil Procedure provides:

**(1)**    ***In General.***  At a hearing or trial, all or part of a deposition may be used against a party on these conditions:

    **(A)**    the party was present or represented at the taking of the deposition or had reasonable notice of it;

    **(B)**    it is used to the extent it would be admissible under the Federal Rules

of Evidence if the deponent were present and testifying; and

  **(C)**  the use is allowed by Rule 32(a)(2) through (8).

Fed. R. Civ. P. 32(a)(1).  "A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds **(A)** that the witness is dead . . . **(C)** that the witness cannot attend or testify because of age, illness, infirmity . . . ."  Fed. R. Civ. P. 32(a)(4) (bold in original).  The Court has broad discretion in determining whether a deposition may be used and abuses its discretion if its determination results in fundamental unfairness.  See Lear v. Equitable Life Assurance Soc'y, 798 F.2d 1128, 1135 (8th Cir. 1986).  The Federal Rules of Civil Procedure do not use the term "trial deposition."  While practicing lawyers use the term, and the Court from its practice days knows what lawyers mean by that phrase, the Federal Rules do not distinguish between "trial" depositions and deposition for other purposes.  Cf. Battle v. Mem'l Hosp. at Gulfport, 228 F.3d 544, 551 (5th Cir. 2000)(citing Savoie v. Lafourche Boat Rentals, Inc., 627 F.2d 722, 724 (5th Cir. 1980)(holding that nothing prohibits the use of discovery depositions at trial)).  Courts should avoid formally creating a subcategory of depositions that the Federal Rules, which Congress has reviewed and declined to alter, have not created or recognized.[6]  See Wheeler Peak, LLC v. L.C.I.2, No. 07-1117, 2010 WL

---

  [6] The Federal Rules of Civil Procedure are initially drafted by an Advisory Committee and adopted by the Supreme Court of the United States.  See 28 U.S.C. § 2072; Miss. Pub. Corp. v. Murphree, 326 U.S. 438, 444 (1946)(referring to "[t]he fact that this Court promulgated the rules as formulated and recommended by the Advisory Committee").  Before a given rule goes into effect, however, Congress has at least seven months in which to review and, if it so chooses, veto the rules that the Supreme Court proposes.

   The Supreme Court shall transmit to the Congress not later than May 1 of the year in which a rule prescribed under section 2072 is to become effective a copy of the proposed rule. Such rule shall take effect no earlier than December 1 of the year in which such rule is so transmitted unless otherwise provided by law.

28 U.S.C. § 2074.  See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 552 (1991); INS v. Chadha, 462 U.S. 919, 935 n.9 (1983)(explaining that the Act of June 19, 1934 "gave

520523, at *2-3 (D.N.M. Jan. 26, 2010)(Browning, J.).

## <u>ANALYSIS</u>

Because the parties do not dispute that a pre-suit deposition under rule 27 is appropriate and because D. Kubler has made an adequate showing for a deposition under this rule, the Court will permit an oral deposition under rule 27(a) to perpetuate D. Kubler's testimony.  Pursuant to the parties' agreement at the hearing, the Court will permit the potential Defendants, before the deposition, to conduct a two-and-a-half interview with D. Kubler on January 31, 2012 at 9:00 a.m. for purposes of acquiring information about her potential claims so that they can adequately conduct a deposition.  The Court will schedule the oral deposition to occur on the days following the pre-deposition interview, from February 1, 2012 through February 3, 2012.  Pursuant to the parties' agreement at the hearing, the Kublers will immediately provide the potential Defendants with the appropriate medical releases for D. Kubler and, in a timely manner and to the extent practicable, provide the potential Defendants with D. Kubler's medical records in the Kublers' possession.

## I.      <u>THE COURT WILL AUTHORIZE A PRE-SUIT DEPOSITION UNDER RULE 27(a).</u>

At the hearing on January 19, 2012, the potential Defendants stated that they do not oppose the Court authorizing D. Kubler's deposition under rule 27.  <u>See</u> Tr. at 3:6-4:6 (Court, Lewis, Maggiore).  Their main concerns involved the deposition's parameters and certain discovery issues surrounding the deposition.  Because the potential Defendants do not oppose a deposition under rule 27(a), the Court will authorize D. Kubler's pre-suit deposition.  Additionally, the Court concludes

---

Congress the opportunity to review the Rules before they became effective and to pass legislation barring their effectiveness if the Rules were found objectionable."); <u>Sibbach v. Wilson & Co.</u>, 312 U.S. 1, 14-15 (1941)(rejecting an argument that rules 35 and 37 were against Congressional policy, in part, because "the rules were submitted to the Congress so that that body might examine them and veto their going into effect if contrary to the policy of the legislature.").

that the Kublers have made the requisite showing and have complied with all the procedural requirements for a pre-suit deposition, such as providing twenty-one days' notice to the potential Defendants of the hearing on the appropriateness of a pre-suit deposition.  The Court believes that this case is one of the special category of cases where rule 27 properly applies, because it is necessary to prevent D. Kubler's testimony from being lost, which would result in a failure of justice.  See Fed. R. Civ. P. 27(a); Ash v. Cort, 512 F.2d at 911.  The median amount of time that people with D. Kubler's type of cancer, stage four non-small cell lung cancer, live is approximately eight months.  See Dr. Lynne Eldridge, What is Stage 4 Lung Cancer Life Expectancy?, About.com, http://lungcancer.about.com/od/whatislungcancer/f/stage4lifeexpectancy.htm (last updated Dec. 9, 2011).  Less than ten percent of individuals with this condition survive for more than five years.  See id.  D. Kubler was diagnosed with this condition approximately a year ago, and is thus beyond the median life expectancy for those with this condition.  See Tr. at 9:5-16 (Farber).  Likewise, it is undisputed that D. Kubler's health is in a volatile condition and that she may die within a short period of time.  She is in grave danger of death.  Under the Federal Tort Claims Act and the applicable New Mexico statutes on medical malpractice, the Kublers must exhaust certain administrative remedies before they can bring suit in federal court.  See 28 U.S.C. § 2675(a); N.M.S.A. 1978, § 41-5-15(A) ("No malpractice action may be filed in any court against a qualifying health care provider before application is made to the medical review commission and its decision is rendered.").  28 U.S.C. § 2675(a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). The Kublers are not trying to use rule 27 as a substitute for the regular discovery tools available to them under the federal rules. Consequently, the Court concludes that a rule 27(a) pre-suit deposition is appropriate.

## II.   THE COURT WILL AUTHORIZE A PRE-DEPOSITION INTERVIEW WITH D. KUBLER AND OTHER LIMITED DISCOVERY CONSISTENT WITH THE PARTIES' AGREEMENT AT THE HEARING.

At the hearing on January 19, 2012, the potential Defendants expressed concern about not having adequate information about the nature of the Kublers' claims as well as the specific facts underlying those claims. The Kublers have set out in detail in their Petition the potential claims and theories they plan to assert as well as a variety of specific facts relating to those claims. See Petition ¶¶ 6-10, 13, at 4-13. Those portions of the Petition provide the potential Defendants with a large amount of information about the Kublers' potential claims and the facts underlying those claims. Furthermore, pursuant to the parties' agreement at the hearing, the Court will permit the potential Defendants, before the deposition, to conduct a two-and-a-half interview with D. Kubler on January 31, 2012, for purposes of acquiring information about her potential claims. The interview will begin at 9:00 a.m. and last until approximately 11:45 a.m. The potential Defendants are to conduct this interview in an informal and non-aggressive manner. It should not resemble a cross examination. The parties may use this interview only for case-development purposes and cannot not use the interview in any form at trial. Given that many of the medical records regarding D. Kubler are currently in the Kublers' possession or available from the applicable medical provider, the Court will also authorize some discovery before the deposition takes place. Pursuant to the parties' agreement at the hearing, the Kublers will immediately provide the potential Defendants with the

-16-

appropriate medical releases[7] for D. Kubler and, in a timely manner and to the extent practicable,

provide the potential Defendants with D. Kubler's medical records in the Kublers' possession.

III.   **THE COURT WILL SET THE DEPOSITION TO BEGIN ON FEBRUARY 1, 2012, AND WILL PERMIT QUESTIONING OF D. KUBLER IN RELATION TO THE TOPICS DISCUSSED IN PARAGRAPHS SIX THROUGH NINE AND THIRTEEN OF THE PETITION.**

At the hearing on January 19, 2012, the Court stated that the parties would conduct the

deposition on February 1, 2012 through February 3, 2012, and that the deposition would begin at

9:00 a.m. on each of these days.  See Tr. at 25:1-7, 26:9-18 (Court).  Regarding the ability of D.

Kubler to recall all her medical providers for a medical release form, the Court stated that it would

ask the Kublers to provide as much information as they could under the circumstances.  See Tr. at

26:21-27:4 (Farber, Court).  A. Kubler stated that she was relatively familiar with D. Kubler's

medical history and would assist in providing information regarding her history of medical

providers.  See Tr. at 27:24-28:5 (A. Kubler).

The Court will set the Rule 27(a) deposition for February 1, 2012 through February 3, 2012.

The deposition will begin at 9:00 a.m. on each of these days and will last for a total of seven hours

across these three days.  The parties may, by agreement, conduct the deposition for a lengthier

period of time.  Rule 27(a) does not provide a time period specifying how much time should pass

between a hearing on whether to conduct a rule 27(a) deposition and the deposition.  See Rule 27(a).

Rule 30(b)(1) provides that a party must receive "reasonable written notice" from the party seeking

to conduct the deposition before the deposition occurs.  D.N.M.LR-Civ 30.1 provides: "Service of

notice of deposition in accordance with Fed. R. Civ. P. 30(b) must be made at least fourteen (14)

---

[7]The District of New Mexico's local rules provide two blank medical release forms as
appendixes to the local rules.  See D.N.M.LR-Civ. app. A.

days before the scheduled deposition. . . . The time for serving notice may be shortened by agreement of all parties or by Court order."  D.N.M.LR-Civ 30.1.

The Court notes that all of the potential Defendants were served with the Petition seeking a rule 27(a) pre-suit deposition on either December 21, 2011 or December 22, 2012.  As required by rule 27(a), twenty-one days passed before the hearing on January 19, 2012.  Before the deposition takes place on February 1, 2012, the potential Defendants will have had approximately forty-days' notice that the Kublers would likely conduct a deposition of D. Kubler in the near future.  While the Court will permit the potential Defendants to question D. Kubler during the deposition in any manner they chose within the scope of the permitted topics, including for purposes of discovery or for use at trial, the Court notes that the caption of rule 27 specifies that these pre-suit depositions are: "Depositions to Perpetuate Testimony."  Fed. R. Civ. P. 27.  The title or caption of a statute or section can aid in resolving an ambiguity in a statute.  See Whitman v. Amer. Trucking Ass'ns, 531 U.S. 457, 482–83 (2001).  The comment that coincided with the rule's adoption in 1937 also provides: "This rule offers a simple method of perpetuating testimony in cases where it is usually allowed under equity practice or under modern statutes."  Fed. R. Civ. P. 27 cmt. 1937 adoption. Thus, the rule appears targeted at preserving the deponent's testimony as opposed to providing the potential Defendants with discovery about the nature of potential claims.  In contrast, the Court has held previously that rule 30 does not distinguish between what one might call a trial deposition as opposed to a discovery deposition.  See Wheeler Peak, LLC v. L.C.I.2, 2010 WL 520523, at *2-3 ("The Federal Rules of Civil Procedure do not use the term 'trial deposition.'  While practicing lawyers use the term, the Federal Rules do not distinguish between 'trial' depositions and deposition for other purposes.").  While the Court, from its own days practicing, knows what lawyers mean when they talk about a discovery deposition and a trial deposition, the Court cannot fairly tell the

-18-

potential Defendants not to ask questions targeted at discovery but only at trial.  The line between questions targeted at discovery and cross examination in preparation for trial is a fine one, and the deposition must be, for the most part, self-executing given that the Court will not be present.  The Court will, at least initially, not be there to serve as a referee.  The Court has to give the potential Defendants leeway to decide later -- rather than at the time of the deposition -- what they want to use at trial.

While the Court acknowledges that the potential Defendants have a legitimate basis for asking questions targeted at discovery and will permit them to do so, their insistence that they must have adequate time for discovery before the pre-suit deposition to flesh out the claims the Kublers may eventually assert does not appear to reflect the purposes of rule 27.  The Court believes that the thirteen-day period between the date of the hearing on January 19, 2012 and the date that the deposition begins on February 1, 2012, is sufficient time for the potential Defendants to prepare for the deposition.  The Court has authorized the potential Defendants to have some discovery before the pre-suit deposition, which rule 27 does not expressly require.  Additionally, the Court has authorized a pre-deposition interview with D. Kubler, which rule 27 does not expressly require.  Lastly, they have had approximately forty-days' notice that this deposition would likely occur at some point in the near future.  Additionally, while the fourteen-day notice period discussed in D.N.M.LR-Civ 30.1 does not expressly apply to rule 27 -- only rule 30 -- the Court believes it still applies, because rule 30 governs some of the procedures to be followed for rule 27 depositions.  See D.N.M.LR-Civ 30.1 ("Service of notice of deposition in accordance with Fed. R. Civ. P. 30(b) must be made at least fourteen (14) days before the scheduled deposition.").  Professor Moore has recognized that depositions under rule 27 "are taken in the manner prescribed by the Federal Rules of Civil Procedure for depositions in pending actions."  6 J. Moore, supra, § 27.16, at 27-32.

D.N.M.LR-Civ 30.1 also permits, however, a court to shorten this fourteen-day period.   See D.N.M.LR-Civ 30.1.  Because D. Kubler's health condition is particularly unpredictable given the progression of her cancer, the Court concludes that a thirteen-day period between the January 19, 2012 period and the February 1, 2012, is an adequate amount of time for the potential Defendants to prepare for the rule 27(a) deposition.

While nothing in the text of rule 27 contemplates multiple depositions of the same deponent, the Court believes that, in an appropriate circumstance, an additional deposition may be permitted under rule 27.  Rule 30 contains provisions addressing what the parties must do if they seek additional depositions of the same deponent.  See Fed. R. Civ. P. 30(a)(2) (recognizing that "[a] party must obtain leave of court" if the party seeks a deposition from a deponent that "has already been deposed in the case," unless the parties have stipulated to an additional deposition).  The rules of statutory construction apply to the Federal Rules of Civil Procedure. See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)(applying the expressio unius est exclusio alterius canon when interpreting rule 9(b) of the Federal Rule of Civil Procedure); Hillis v. Heineman, 626 F.3d 1014, 1017–18 (9th Cir. 2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure."). Cf. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 163 (1988)("Because the Federal Rules of Evidence are a legislative enactment, we turn to the 'traditional tools of statutory construction' in order to construe their provisions." (citation omitted)).  "Statutory construction must begin with the language employed by [the writer] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."  Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985). When a statute includes particular language in one section of a statute, but omits it in another section of the same act, courts generally presume that the drafter of the statute acted intentionally and

purposefully in the including the language in one provision and omitting it from another. See Burlington N. & Santa Fe. Ry. Co. v. White, 548 U.S. 53, 62-63 (2006). Nevertheless, Professor Moore has recognized that depositions under this rule "are taken in the manner prescribed by the Federal Rules of Civil Procedure for depositions in pending actions." 6 J. Moore, supra, § 27.16, at 27-32. Given that rule 27 does not flesh out the procedures that govern depositions, the Court believes that using rule 30 procedures to fill any gaps regarding the procedures for rule 27 depositions is appropriate. Thus, any party seeking an additional deposition would need to comply with rule 30(a)(2) or other applicable provision of rule 30.

Rule 27(a)(3) also requires the Court to specify the subject matter of the deposition. See Fed. R. Civ. P. 27(a)(3). The Kublers have laid out generally the subjects on which they plan to ask D. Kubler questions in paragraphs six through nine of their Petition and have provided specific subjects on which they plan to ask her questions in paragraph thirteen of their Petition. In brief summary, the Kublers set out the following specific subjects in paragraph 13 on which they expect D. Kubler to testify, including: (i) the reasons she sought urgent care on February 17, 2009 at Presbyterian PMG Northside Urgent Care; (ii) the care she received on that date; (iii) the chest x-ray she received on that date along with the conversations she had with health care practitioners regarding the x-ray; (iv) a follow-up appointment at the 377th Medical Group at the Kirtland Air Force Base; (v) her telephone conversation with Dr. Lopez regarding the chest x-ray; (vi) her appointment with the 377th Medical Group on February 20, 2009, including the information she provided to the medical group and the discussions during treatment; (vii) her appointment for an annual physical examination with the 377th Medical Group on March 10, 2010, including the information she provided to the medical group and the discussions during treatment; (viii) her subsequent physical symptoms that led to her return to the 377th Medical Group in November 2010 and the resulting

diagnosis of cancer; (ix) her treatment for this cancer; (x) her physical pain and suffering as well as attendant physical problems related to this treatment; (xi) her damages; and (xii) the effects of these incidents on A. Kubler and R. Kubler as it relates to their potential claims.  See Petition ¶ 13, at 10-13.  The potential Defendants have expressed no opposition to the Kublers' contention that these are appropriate subject matters for the deposition.  After carefully considering the topics discussed in these paragraphs, the Court believes that they appropriately relate to the potential claims which the Kublers may assert in a future lawsuit.  The Court will limit the subject matter of the deposition to the topics listed in paragraphs six through nine and in paragraph thirteen of the Petition.  The Court believes that the evidence that the Kublers seek is material and competent.  These subjects are material in that they address "the substantial matters in dispute or ha[ve] a legitimate or effective bearing on the decision."  6 J. Moore, supra, § 27.16, at 27-32 to 27-33.  The Court believes that the Kublers seek to procure D. Kubler's testimony on a relatively narrow range of topics that would be directly relevant to a future lawsuit that may involve the potential Defendants.

Finally, the Court has carefully reviewed the Petition, and there does not appear to be any potential parties other than the potential Defendants who have entered an appearance.  No party has identified any other potential parties.  Indeed, the Kublers are not certain that they will name as defendants in a subsequent lawsuit all of the potential Defendants.  There does not appear to be a reason to require additional service or notice pursuant to rule 27(a).  Before taking the deposition, however, the Kublers and the potential Defendants should think about the potential case carefully and file a letter with the Court, within three days of entry of this order, confirming that they know of no other potential parties.

**IT IS ORDERED** that the request for a pre-suit deposition under rule 27(a) of the Federal Rules of Civil Procedure contained in the Verified Petition of Deborah D. Kubler, Andrea Lynn

Kubler, and Robert Michael Kubler, Jr., Pursuant to Rule 27 of the Federal Rules of Civil Procedure, to Take and Perpetuate the Audio-Visual and Stenographic Deposition of Petitioner Deborah D. Kubler, filed December 14, 2011 (Doc. 1), is granted.  Pursuant to the parties' agreement at the hearing, the Court will permit the potential Defendants,[8] prior to the deposition, to conduct at 9:00 a.m. a two-and-a-half-hour interview with D. Kubler on January 31, 2012 at 9:00 a.m. for purposes of acquiring information about her potential claims.  The interview will be non-adversarial and informal.  The Court will schedule the oral deposition to occur on the days following the pre-deposition interview, from February 1, 2012 through February 3, 2012, at the court reporter's office. Pursuant to the parties' agreement at the hearing, Petitioners D. Kubler, Andrea Lynn Kubler, and Robert Michael Kubler Jr. will immediately provide the potential Defendants with the appropriate medical releases for D. Kubler consistent with the example medical releases in the District of New Mexico's local rules.  The Petitioners will also, in a timely manner and to the extent practicable, provide the potential Defendants with D. Kubler's medical records in the Kublers' possession.  The parties will file a letter within three days of the date of entry of this order confirming that all potential parties have been identified and served.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Steven G. Farber
Santa Fe, New Mexico

    *Attorney for the Petitioners*

---

[8]The potential Defendants include the following individuals or entities: (i) the United States of America; (ii) Presbyterian Healthcare Services, Inc.; (iii) Presbyterian PMG Northside Urgent Care; (iv) Radiology Associates of Albuquerque, P.A.; and (v) Kathleen Marie Lopez, M.D.

Kenneth J. Gonzales
  United States Attorney
Virgil H. Lewis II
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for Respondent United States of America*

Denise M. Chanez
Rodey, Dickason, Sloan, Akin, & Robb, P.A.
Albuquerque, New Mexico

    *Attorneys for Respondents Presbyterian Healthcare Services, Inc. and*
       *Presbyterian PMG Northside Urgent Care*

W. Ann Maggiore
Butt Thornton & Baehr, P.C.
Albuquerque, New Mexico

    *Attorneys for Respondents Radiology Associates of Albuquerque, P.A. and*
       *Kathleen Marie Lopez, M.D.*